UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

STACEY SIMEON HALL,

        Plaintiff,        Civil Action No.: 18-10877
                                Honorable Matthew F. Leitman
v.                          Magistrate Judge Elizabeth A. Stafford

R. PARISE, *et al.*,

        Defendants.
_____/

## REPORT AND RECOMMENDATION TO GRANT
## DEFENDANTS' MOTION FOR SUMMARY JUDGMENT [ECF NO. 26]

Plaintiff Stacey Simeon Hall, a prisoner proceeding *pro se*, filed a complaint against the City of Monroe[1] and several of its police officers alleging false arrest, excessive force and municipal liability. [ECF No. 1]. Defendants move for summary judgment, and Hall has responded. [ECF No. 26, ECF No. 36]. The Court **RECOMMENDS** that defendants' motion be **GRANTED** and that Hall's claims be **DISMISSED**.

**I.**    **FACTUAL BACKGROUND**

In the evening in December 2017, Hall's girlfriend, Tracy Micks-Harm, called the City of Monroe's central dispatch to request an officer come to

---

[1] Monroe County and several county employees were dismissed from this action. [ECF No. 7].

her house "to keep the peace." [ECF No. 37-2, PageID.698, Ex. A, 0:18].[2] Hall was "very, very, very intoxicated" and she was "afraid he's going to get aggressive." [*Id.*, Ex. A, 0:23, 0:55]. When the dispatch operator asked about weapons in the house, Micks-Harm denied knowledge of any weapons but noted, "We have tools here and he's used a hammer in the past." [*Id.*, Ex. A, 1:13-1:21]. She ended the call by saying, "He's already starting…. Please hurry up." [*Id.*, Ex. A, 1:32-1:37].

When Officers Parise[3] and Cousino (who are named as defendants) arrived at Micks-Harm's home, they immediately encountered a hostile and aggressive Hall. [ECF No. 37-5, PageID.701, Ex. D, 0:32-1:46]. Hall repeatedly told the defendants to get out of the house and, when asked by Officer Parise what the problem was, Hall responded that the officers were the problem. [*Id.*, Ex. D, 1:37; ECF No. 26-3, PageID.517-519]. Officer Parise asked Hall if he had any weapons, and he responded, "Yeah, my hands." [No. 37-5, PageID.701, Ex. D, 1:39; ECF No. 26-3, PageID.520]. Hall continued his profane demands for the officers to leave while phoning 911 to report that he had two officers in his home assaulting him. [No. 37-5, PageID.701. Ex. D, 1:51-2:38]. Ignoring the officers' orders to put the

---

[2] Exhibits A through E are audio recordings that were filed in the traditional manner.
[3] Officer Ryan Parise's name was misspelled in the caption, as docketed.

2

phone down, Hall apparently turned away from the officers, retreating within the house. [No. 37-5, PageID.701, Ex. D, 2:39; ECF No. 26-3, PageID.521]. Officer Parise informed Hall that he was being detained and they tried to secure him. [ECF No. 37-5, PageID.70, Ex. D, 2:42].

By all accounts, a physical struggle ensued after Officer Parise tried to grab Hall's arm to handcuff him, and they both fell onto a sofa. [No. 37-5, PageID.701, Ex. D, 2:42-3:17; ECF No. 26-2, PageID.424; ECF No. 26-4, PageID.547, 549]. On the body microphone audio, Officer Cousino can be heard repeatedly telling Hall that he was under arrest and to put his arms behind his back, and Hall can be heard shouting defiant profanities at the officers. [ECF No. 37-5, PageID.701, Ex. D, 2:50-3:50]. On the audio, the officers told Hall to roll over, and Micks-Harm repeatedly shouted, "Stacey, stop!" Officer Parise yelled for Hall to "Stop. Stop resisting." Micks-Harm echoed, "Stop resisting." [*Id.*, Ex. D, 2:43-3:48; ECF No. 26-3, PageID.527; ECF No. 26-2, PageID.413-414].

Officers Parise and Cousino finally secured and handcuffed Hall, who continued to hurl profanities and threats at the officers, and Micks-Harm continued to tell Hall to stop. [ECF No. 26-3, PageID.525-528; ECF No. 37-5, PageID.701, Ex. D, 2:50-4:58]. Corporal Flora arrived as back-up, and the audio captured the officers again telling Hall that he was under

arrest. [ECF No. 37-5, PageID.701, Ex. D, 4:47]. They managed to search Hall for weapons and get him into Corporal Flora's patrol car. [*Id.*, Ex. D, 10:38-11:01].

Officer Cousino's body mic recorded his conversation with Micks-Harm after Hall had been placed in the cruiser:

> Micks-Harm: I didn't want this to happen.
>
> Officer Cousino: Understandable. Once he started with us, that's when he made the choice.
>
> Micks-Harm: I understand. I do understand. I mean I was here and I saw that. I was hoping I caught the situation before….

[ECF No. 37-5, PageID.701, Ex. D. 11:30-11:50].

Hall demanded medical treatment and was taken to ProMedica Hospital and then to the Monroe County Detention Center. [ECF No. 26-4, PageID.547]. Hall was charged with two counts of felony assault and resisting an officer and one count of misdemeanor false reporting of an emergency. [*Id.*]. A jury convicted Hall felony assault and resisting an officer, and false reporting of an emergency. [ECF No. 26-5, PageID.552-553]. A habitual offender with three other convictions, Hall was sentenced to 365 days in jail and three years of probation. [*Id.*].

## II.   ANALYSIS

### A.

"The Court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Court's function at the summary judgment stage "is not to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

The party seeking summary judgment bears the initial burden of informing the Court of the basis for its motion and must identify particular portions of the record that demonstrate the absence of a genuine dispute as to any material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the movant satisfies this burden, the burden shifts to the non-moving party to go beyond the pleadings and set forth specific facts showing a genuine issue for trial. *Id.* at 324. The Court must view the factual evidence in the light most favorable to the non-moving party. *Scott v. Harris*, 550 U.S. 372, 380 (2007). But "[t]he failure to present any evidence to counter a well-supported motion for summary judgment alone is grounds for granting the motion." *Everson v. Leis*, 556 F.3d 484, 496 (6th Cir.

2009). A scintilla of evidence is also insufficient; "there must be evidence on which the jury could reasonably find for the plaintiff." *Liberty Lobby*, 477 U.S. at 252. And "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott,* 550 U.S. at 380.

**B.**

Defendants seek summary judgment of Hall's false arrest claim, arguing that they had probable cause to arrest him. But the Court need not consider probable cause to resolve this issue because *Heck v. Humphrey*[4] precludes a Fourth Amendment false arrest claim until any convictions resulting from the arrest are overturned. *Wallace v. Kato*, 549 U.S. 384, 393 (2007). Hall's claim for false arrest is barred because his convictions have not been invalidated. [ECF No. 26-5].

**C.**

Defendants argue that they are entitled to summary judgment on Hall's excessive force claim because Officers Parise and Cousino's

---

[4]512 U.S. 477, 486-87 (1994).

conduct in detaining and arresting him was reasonable under the circumstances and did not violate the Fourth Amendment.

Courts analyze claims that police officers used excessive force during an arrest, investigatory stop or other seizure under the Fourth Amendment's "reasonableness" standard. *Graham v. Connor*, 490 U.S. 386, 395 (1989). In applying this standard, a court considers "the totality of the circumstances, including the severity of the crime at issue, whether the suspect posed an immediate threat to the safety of the officers or others, and whether the suspect was actively resisting arrest." *Brax v. City of Grand Rapids*, 742 F.App'x 952, 956 (6th Cir. 2018) (citing *Graham*, 490 U.S. at 396). Defining "reasonable force is partially dependent on the demeanor of the suspect." *Marvin v. City of Taylor,* 509 F.3d 234, 245 (6th Cir. 2007) (internal citation and quotation marks omitted).

> The reasonableness of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight. Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates the Fourth Amendment. In reviewing the reasonableness of a police officer's conduct, we must allow[ ] for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation.

*Brax,* 742 F.App'x at 956 (internal quotation marks and citations omitted).

"'[T]he officer's on-the-spot judgment about the level of force necessary'"

must be given deference, "and this measure of deference 'carries great weight when all parties agree that the events in question happened very quickly.'" *Id.* (quoting *Davenport v. Causey*, 521 F.3d 544, 552 (6th Cir. 2008)).

Hall argues that he was immediately assaulted by Officers Parise and Cousino after he opened the door to them, that they forced their way into the home after he repeatedly asked them to leave, and that he called 911 because he was being pushed, shoved and punched by the officers. [ECF No. 36, PageID.654]. He argues that the officers repeatedly struck him with closed-fists, amounting to excessive force, and cites the testimony of Micks-Harm as support for his account. [ECF No. 36, PageID.654-656; ECF No. 26-2, PageID.425-426]. The officers argue their conduct was reasonable because of the threat Hall posed to the officers and his active resistance, and they direct the Court's attention to the audio recordings from the 911 calls and the officers' body microphones as support for granting defendants' motion. [ECF No. 37].

Although facts must usually be viewed in a light most favorable to the nonmoving party, "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for

8

purposes of ruling on a motion for summary judgment." *Scott*, 550 U.S. at 380. "[W]itness accounts seeking to contradict an unambiguous video recording do not create a triable issue. . . . [A] court . . . need not construe the record 'in such a manner that is wholly unsupportable—in the view of any reasonable jury—by the video recording.'" *Shreve v. Franklin County*, 743 F.3d 126, 132 (6th Cir. 2014) (quoting *Marvin,* 509 F.3d at 239). The *Scott* analysis is not restricted to cases involving videotapes. *Id.* at 133. Testimony blatantly contradicted by an audio recording may be disregarded in a summary judgment analysis. *Coble v. City of White House*, 634 F.3d 865, 868-69 (6th Cir. 2011).

Here, the audio from the officers' body mics and the 911 calls contradict Hall's version of the facts and any assertion that the amount of force employed by Officers Parise and Cousino was unreasonable under the circumstances. The officers were responding to Mick-Harm's call for emergency help because Hall was "very, very, very intoxicated" and potentially violent. [ECF No. 37-2, PageID.698, Ex. A, 0:23-1:21]. The audio recordings corroborate that an intoxicated and belligerent Hall immediately confronted Officers Parise and Cousino when they arrived. [ECF No. 37-4, PageID.700; ECF No. 37-5, PageID.701, Ex. D]. "'Drunk persons are generally unpredictable' and 'heavy intoxication create[s] a

9

more volatile situation.'" *Brax*, 742 F. App'x at 956 (quoting *Marvin*, 509 F.3d at 246).

The audio also establishes that Hall, who is noted to be 6'4" and 220 pounds, was immediately defiant, aggressive and profane when Officers Parise and Cousino arrived. He told the officers that they were going to have a problem and that his hands were his weapons. [ECF No. 26-3, PageID.520; ECF No. 26-4, PageID.544; ECF No. 37-5, PageID.701, Ex. D, 0:32-1:39]. Hall's intoxication and aggressive behavior, combined with the tightly confined physical space and the officers' inability to search for weapons, posed an immediate threat to their safety and they reasonably decided to detain Hall. The audio of the encounter makes abundantly clear that Hall created a volatile situation and that he actively resisted the officers' attempts to de-escalate his aggression, and then to detain him. [ECF No. 37-5, PageID.701, Ex. D]. The officers needed to use force to subdue and arrest Hall. After Hall was subdued, handcuffed and placed in the cruiser, Micks-Harm acknowledged that Hall had instigated the confrontation with the officers. [ECF No. 37-5, PageID.701; Ex. D].

When viewed through Officers Parise and Cousino's perspective, and when applying the required deference to their judgment when responding to the unpredictable and volatile situation created by Hall, this Court cannot

conclude that the officers acted unreasonably or violated Hall's Fourth Amendment rights.

### D.

To the extent Hall asserts excessive force claims against Officers Flora and Breeding, Lieutenants Tolstedt and Marks, and Chief McCormick, they are also entitled to summary judgment. As noted above, the Court does not believe the force used to detain and arrest Hall was excessive. But even if the force used was found excessive, these officers are not liable. First, of this group, only Officer Flora was at the scene of Hall's arrest.

> Each defendant's liability must be assessed individually based on his own actions. To hold an officer liable for the use of excessive force, a plaintiff must prove that the officer (1) actively participated in the use of excessive force, (2) supervised the officer who used excessive force, or (3) owed the victim a duty of protection against the use of excessive force. As a general rule, mere presence at the scene of a search, without a showing of direct responsibility for the action, will not subject an officer to liability.

*Binay v. Bettendorf*, 601 F.3d 640, 650 (6th Cir. 2010). Hall has cited no evidence that Officer Flora participated or supervised (or was even yet on the scene) during the altercation giving rise to his excessive force claims. In fact, Hall testified at his criminal trial that Flora came in after the punching stopped and that "Flora pulled both officers off of me." [ECF No.

11

26-2, PageID.459]. Officer Flora, as well as the other named police officers, are entitled to summary judgment.

### E.

Hall also asserts claims against the City of Monroe under *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658 (1978), which permits local governing bodies to be sued directly under Section 1983 where the alleged unconstitutional action stems from a policy, ordinance, regulation or decision officially adopted or promulgated by the local government's officers. *Id.* at 690. When a plaintiff suffers no violation of his constitutional rights, his municipal liability claims under *Monell* also fail. *Shreve*, 743 F.3d at 138. Hall's claims against the City of Monroe lack merit and should be dismissed.[5]

## II. CONCLUSION

Defendants' motion for summary judgment [ECF No. 26] should be **GRANTED** and Hall's complaint should be **DISMISSED**.

|  |  |
|---|---|
|  | s/Elizabeth A. Stafford |
|  | ELIZABETH A. STAFFORD |
| Dated: September 30, 2019 | United States Magistrate Judge |

---

[5] Because official capacity suits against officers represent another way of pleading an action against the entity for which the officer is an agent, Hall's claims against the defendant officers in their official capacity should also be dismissed. *Kentucky v. Graham*, 473 U.S. 159, 165 (1985) (citing *Monell*, 436 U.S. at 690, n.55).

## **NOTICE TO THE PARTIES REGARDING OBJECTIONS**

Either party to this action may object to and seek review of this Report and Recommendation, but must act within fourteen days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Secretary of HHS*, 932 F.2d 505 (6th Cir. 1991)*; United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). Filing objections which raise some issues but fail to raise others with specificity will not preserve all objections that party might have to this Report and Recommendation. *Willis v. Secretary of HHS*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). A copy of any objection must be served upon this Magistrate Judge. E.D. Mich. LR 72.1(d)(2).

Each **objection must be labeled** as "Objection #1," "Objection #2," etc., and **must specify** precisely the provision of this Report and Recommendation to which it pertains. Not later than fourteen days after service of objections, **the non-objecting party must file a response** to the objections, specifically addressing each issue raised in the objections in the same order and labeled as "Response to Objection #1," "Response to

Objection #2," etc. The response must be **concise and proportionate in length and complexity to the objections**, but there is otherwise no page limitation. If the Court determines that any objections are without merit, it may rule without awaiting the response.

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on September 30, 2019.

                                              s/Marlena Williams
                                              MARLENA WILLIAMS
                                              Case Manager