UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

STACEY SIMEON HALL,

     Plaintiff,

v.

R. PARISE, *et al.*,

     Defendant.

Case No. 18-cv-10877
Hon. Matthew F. Leitman

_____/

**ORDER (1) OVERRULING IN PART AND SUSTAINING IN PART
PLAINTIFF'S OBJECTIONS (ECF No. 47) TO THE MAGISTRATE
JUDGE'S REPORT AND RECOMMENDATION, (2) ADOPTING IN PART
THE DISPOSITION RECOMMENDED BY THE MAGISTRATE JUDGE
(ECF No. 44), (3) GRANTING IN PART AND DENYING IN PART
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT (ECF No. 26), (4)
DENYING PLAINTIFF'S MOTION FOR SEVERING FROM
CONSOLIDATION (ECF No. 46), AND (5) DENYING PLAINTIFF'S
MOTION FOR ORAL ARGUMENT (ECF No. 50)**

On the evening of December 21, 2017, Tracy Micks-Harm, the significant

other of Plaintiff Stacey Simeon Hall, sought help from the Monroe Police

Department because Hall was drunk and out of control in her house. Monroe

Officers Parise and Cousino responded to the scene. Audio recordings from the

officers' body microphones reveal that when the officers entered Micks-Harm's

house, Hall was belligerent, threatening, aggressive, and non-compliant. (*See* Parise

Body Mic Audio, ECF No. 37-4; Cousino Body Mic Audio, ECF No. 37-5.) Hall

also unlawfully called 911 to report that the responding officers were committing a

crime against him, and he disobeyed several of the officers' commands. The officers ultimately ended up using force to subdue Hall, secure him in handcuffs, and arrest him. Hall was later charged in state court with two counts of resisting and obstructing an officer ("R & O") and one count of making a false report of a medical or other emergency. A jury convicted Hall on one count of R & O and on the false report charge and acquitted him on the second R & O charge.

In this action, Hall claims that the officers lacked probable cause to arrest him and that they used excessive force when arresting him. Hall also asserts a municipal liability claim against the City of Monroe. The Defendants moved for summary judgment, and the assigned Magistrate Judge has recommended that the Court grant summary judgment against Hall on all of his claims. Hall has filed timely objections to the Magistrate Judge's Report and Recommendation.

The Court agrees with the Magistrate Judge, although on a different basis, that Hall's false arrest claim fails as a matter of law. The officers are entitled to qualified immunity on that claim because, at an absolute minimum, they had a reasonable basis to believe that they had probable cause to arrest Hall.

Likewise, the Court shares the Magistrate Judge's view that the City of Monroe is entitled to summary judgment. Hall has not presented any evidence that the City had a custom or policy of using (or tolerating) excessive force or making (or tolerating) unlawful arrests.

But the Court respectfully disagrees with the Magistrate Judge's conclusion that the officers are entitled to summary judgment on Hall's excessive force claim. There is no doubt that – given Hall's combativeness and resistance – the officers were entitled to use *some* force against Hall. The question here is: did the officers use too much force? Hall and Micks-Harm both testified under oath that the officers continuously punched Hall while he was not resisting and after they had successfully gotten him under control. The Magistrate Judge acknowledged that such testimony would ordinarily preclude summary judgment against Hall on his excessive force claim. But the Magistrate Judge discounted the testimony under *Scott v. Harris*, 550 U.S. 372, 380 (2007), on the ground that it was blatantly contradicted by the two audio recordings of the encounter. The Court has carefully listened to the audio recordings and concludes that they do not conclusively rebut Hall's and Micks-Harm's testimony to such an extent that their testimony may be entirely discounted on summary judgment. And in light of that testimony, the officers are not entitled to summary judgment on Hall's excessive force claim (which they sought on the merits of Hall's claim only and not on the basis of qualified immunity).

To be sure, Hall's excessive force claim seems weak. While the audio recordings do not warrant the entry of summary judgment against Hall, the tapes seem far more consistent with the officers' version of events than with Hall's and Micks-Harms'. But the call here is one for the jury to make.

Accordingly, for the reasons explained below, the Court **SUSTAINS IN PART** and **OVERRULES IN PART** Hall's Objections (ECF No. 47), **ADOPTS IN PART** the disposition recommended by the Magistrate Judge (ECF No. 44), and **GRANTS IN PART** and **DENIES IN PART** Defendants' Motion for Summary Judgment (ECF No. 26).

Hall has also filed two additional motions: a Motion for Severing from Consolidation (ECF No. 46) and a Motion for Oral Argument (ECF No. 50). Those motions are **DENIED**.

## I

## A

On the evening of December 21, 2017, Hall's significant other Tracy Micks-Harm called the Monroe police department to request that an officer come to her house and "keep the peace." (*See* Micks-Harm Call Audio, ECF No. 37-2; Micks-Harm Call Tr. at 6:7–8, ECF No. 26-3, PageID.516.) Micks-Harm reported that Hall was "very, very, very intoxicated" and "I'm starting to get very nervous . . . . I'm afraid he's going to get aggressive." (Micks-Harm Call Tr. at 6:8–20, ECF No. 26-3, PageID.516.) Officers Ryan Parise and Shawn Cousino arrived at Micks-Harm's home in response to her call.[1] Both officers wore body microphones that evening,

---

[1] Officer Parise's last name is incorrectly spelled as "Parese" in the case caption.

and both microphones recorded the encounter with Hall and Micks-Harm. (*See* Parise Body Mic Audio, ECF No. 37-4; Cousino Body Mic Audio, ECF No. 37-5.)

Micks-Harm met the officers outside her house and invited them inside. (*See* Micks-Harm Testimony at 168:1–3, ECF No. 26-2, PageID.399.) Once inside, the officers encountered a belligerent Hall. (*See* Cousino Body Mic Audio at 0:32–1:46, ECF No. 37-5.) Hall repeatedly told the officers to "Get the fuck out the house." (Cousino Body Mic Audio Tr. at 8:22–24, ECF No. 26-3, PageID.518.) When Parise asked Hall if he had any weapons on him, Hall responded "Yeah, my hands." (*See id.* at 10:4–5, PageID.520.) When Parise asked Hall for identification, Hall responded by dialing 911 and telling the dispatcher "my emergency is two officers in the house." (Hall 911 Call, ECF No. 37-3; Cousino Body Mic Audio Tr. at 10:21, ECF No. 26-3, PageID.520.) Hall loudly demanded the officers' badge numbers, told Parise to "get your hands off me," and reported "I got an officer assaulting me at this time." (Cousino Body Mic Audio Tr. at 11:2–19, ECF No. 26-3, PageID.521.) Parise told Hall that he was misusing 911, said that Hall was the one who had touched him, and ordered Hall to put the phone down. (*See id.* at 10:14–11:17, PageID.520–521; Cousino Body Mic Audio at 1:25–2:00, ECF No. 37-5.) Hall did not comply, and Parise told Hall that he was being detained. (*See* Cousino Body Mic Audio at 2:00–2:10, ECF No. 37-5.)

A physical struggle ensued. (*See id.* at 2:10–3:55.)  As the officers subdued and handcuffed Hall, Hall shouted profanities at the officers and exclaimed that they were hitting him even though he was not resisting. (*See id.*; *see also* Cousino Body Mic Audio Tr. at 13:1–14:25, ECF No. 26-3, PageID.523–524.)

Hall and the officers offer sharply conflicting accounts of the struggle. According to the officers, Hall placed Parise in a headlock, and Cousino used "two or three" "brachial stun" strikes on Hall to get his hands off Parise's neck.[2] (*See* Parise Testimony at 76:4–77:11, ECF No. 26-2, PageID.307–308; Cousino Testimony at 109:3–110:22, ECF No. 26-2, PageID.340–341.[3])  The officers deny using any other force against Hall. (*See, e.g.*, Parise Testimony at 93:25–94:2, ECF No. 26-2, PageID.324–325; Cousino Testimony at 135:20–22, ECF No. 26-2, PageID.366.)  In contrast, Hall says that Parise had *him* in a headlock and was "continuously" hitting him in the head throughout the encounter. (Hall Testimony at 227:1–6, ECF No. 26-2, PageID.458.)  Hall insists that "I was getting beat up.  I did not resist." (*Id.* at 231:15, PageID.462.)  Micks-Harm similarly says that, although "Stacey wasn't fighting [Parise] at all," both officers punched Hall approximately

---

[2] According to Cousino, a brachial stun is "an open hand technique where you strike someone along the neck below the ear.  It causes them to temporarily release their grip." (Cousino Testimony at 109:12–14, ECF No. 26-2, PageID.340.)

[3] All of the testimony from all of the witnesses cited in text in this Opinion and Order was given at Hall's state-court criminal trial.  That sworn testimony has been provided to the Court for consideration in connection with the pending motion.

six to ten times each. (*See* Micks-Harm Testimony at 180:18, 200:1–7, ECF No. 26-2, PageID.411, 431.)

Corporal Jason Flora arrived at the scene after the officers placed Hall under arrest, and the three officers put Hall in Flora's patrol car. (*See* Flora Body Mic Audio at 5:30–11:35, ECF No. 37-6.) Hall demanded medical treatment and was taken to ProMedica Hospital. (*See* Parise Incident Report, ECF No. 26-4, PageID.547.) Hall was then held at the Monroe County Detention Center. (*See id.*)

## B

Hall was charged in state court with three criminal offenses: "Police Officer – Assaulting/Resisting/Opposing against Officer Ryan Parise" under MCL 750.81d(1), "Police Officer – Assaulting/Resisting/Opposing against Officer Shawn Cousino" under MCL 750.81d(1), and "False Report of a Medical or Other Emergency" under MCL 750.411a(4)(a). (*See* Jury Instructions at 273:2–274:2, ECF No. 26-2, PageID.504–505; Verdict, ECF No. 26-5, PageID.552, 557–558.) The first R & O charge related to Hall's interactions with Parise, and the second related to his interactions with Cousino. The false report charge related to the 911 call. (*See* Jury Instructions at 274:3–11, ECF No. 26-2, PageID.505.) A jury convicted Hall of resisting Officer Parise and making a false report but acquitted Hall of resisting Officer Cousino. (*See* Verdict, ECF No. 26-5, PageID.557–558.)

## C

Hall filed the instant action on February 26, 2018, in the Circuit Court for the County of Monroe. (*See* Compl., ECF No. 1, PageID.7–14.)  Hall's complaint named many defendants: arresting Officers Parise and Cousino; arriving Officer Flora; City of Monroe Police Chief Charles McCormick; City of Monroe police Lieutenants Tolstedt and Marks; City of Monroe police Officer Breeding; City of Monroe FOIA Coordinator Michelle Lavoy; various Monroe County dispatchers, sheriff's officers, and prosecutors; the City of Monroe; the County of Monroe; and the State of Michigan. (*See id.* at PageID.8.)  Defendants removed the case to this Court on March 16, 2018. (*See* Notice of Removal, ECF No. 1.)  Monroe County and the individual defendants who worked for Monroe County were dismissed from this action on April 26, 2018. (*See* Joint Stip. & Order, ECF No. 7.)  As of that point, the remaining defendants were Parise, Cousino, Flora, McCormick, Tolstedt, Marks, Breeding, Lavoy, the City of Monroe, and the State of Michigan.

Hall's complaint asserts three claims against the remaining defendants under 42 U.S.C. § 1983: false arrest, excessive force, and municipal liability. (*See id.*)

## D

Defendants filed a motion for summary judgment on March 22, 2019. (*See* Mot. for Summ. J., ECF No. 26.)  Defendants argued that the City of Monroe should not be held liable under *Monell* because Hall could not show that the City had a

custom, policy, or practice of tolerating false arrests or excessive force. (*See id.* at PageID.208–213.) Defendants also argued that Hall did not have a viable false arrest claim because the officers had probable cause to arrest Hall. (*See id.* at PageID.213–215.) Alternatively, Defendants argued that, even if the officers actually lacked probable cause, they are entitled to qualified immunity on the false arrest claim because they reasonably believed that they had probable cause. (*See id.* at PageID.215–217.) Finally, Defendants argued that the officers are entitled to summary judgment on Hall's excessive force claim because the officers used a reasonable amount of force to subdue Hall while he was actively resisting. (*See id.* at PageID.217–218.) Notably, Defendants did not invoke qualified immunity as a defense to Hall's excessive force claim. (*See id.*)

## E

The Magistrate Judge issued her Report and Recommendation on September 30, 2019. (*See* R & R, ECF No. 44.) She recommended granting Defendants' motion and dismissing all of Hall's claims. (*See id.*)

First, the Magistrate Judge recommended dismissing Hall's false arrest claim as barred under *Heck v. Humphrey*, 512 U.S. 477 (1994). (*See* R & R, ECF No. 44, PageID.744.) In *Heck*, the Supreme Court held that "when a state prisoner seeks damages in a § 1983 suit, the district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or

sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated." 512 U.S. at 487. The Magistrate Judge reasoned that *Heck* barred Hall's false arrest claim because (1) an essential element of that claim was a lack of probable cause for his arrest and (2) a finding in Hall's favor on that element would necessarily imply the invalidity of Hall's R & O conviction because an essential element of that conviction was that the arrest was supported by probable cause. (*See* R & R, ECF No. 44, PageID.744.)

Second, the Magistrate Judge recommended dismissing Hall's excessive force claim. She concluded there was no genuine issue of fact as to whether the officers used reasonable force in detaining Hall. (*See id.* at PageID.744–749.) She determined that the officers properly used force against Hall because he was immediately "defiant, aggressive and profane" when the officers entered Micks-Harm's home (in response to her report that Hall was "very intoxicated" and potentially violent) and because he actively resisted their lawful efforts to arrest him. (*See id.* at PageID.747–748.) The Magistrate Judge acknowledged that Hall and Micks-Harm had testified that the officers were punching Hall when he was not resisting, but she discounted that testimony under *Scott*, *supra*, on the ground that it was conclusively contradicted by the audio recordings of the interaction. (*See id.* at PageID.748.)

Third, the Magistrate Judge recommended dismissing Hall's excessive force claim against the other named police officers who were not involved in the altercation between Hall, Parise, and Cousino: Officers Flora and Breeding, Lieutenants Tolstedt and Marks, and Chief McCormick. (*See id.* at PageID.749–750.) The Magistrate Judge noted that Hall did not present evidence that any other named officer "participated or supervised (or was even yet on the scene) during the altercation giving rise to his excessive force claims." (*Id.*)

Fourth, the Magistrate Judge recommended dismissing Hall's *Monell* claim against the City of Monroe. (*See id.* at PageID.750.) She determined that since Hall had not established that any of the individual defendants violated his constitutional rights, his municipal liability claim under *Monell* fail. (*See id.*) The Magistrate Judge also recommended dismissing Hall's official capacity suits against the officers "[b]ecause official capacity suits against officers represent another way of pleading an action against the entity for which the officer is an agent." (*Id.* at 12 n.5, PageID.750; citing *Kentucky v. Graham*, 473 U.S. 159, 165 (1985).)

Hall filed timely objections to the Magistrate Judge's R & R on October 15, 2019.[4] (*See* Objections, ECF No. 47.) Defendants filed a timely response to Hall's objections on October 29, 2019. (*See* Objections Resp., ECF No. 48.)

_____

[4] Hall lists nine total objections to the R & R. (*See* Objections, ECF No. 47.) The first seven object to the Magistrate Judge's recital of the facts of the case and conclusion that Hall's version of events was blatantly contradicted by the audio

**II**

Where a party objects to a portion of a Magistrate Judge's report and recommendation, the Court reviews that portion *de novo*. *See* Fed. R. Civ. P. 72(b)(3); *Lyons v. Comm'r of Soc. Sec.*, 351 F. Supp. 2d 659, 661 (E.D. Mich. 2004). The Court has no duty to conduct an independent review of the portions of the report and recommendation to which a party has not objected. *See Thomas v. Arn*, 474 U.S. 140, 149 (1985).

A movant is entitled to summary judgment when it "shows that there is no genuine dispute as to any material fact." *SEC v. Sierra Brokerage Servs., Inc.*, 712 F.3d 321, 326–27 (6th Cir. 2013) (citing Fed. R. Civ. P. 56(a)). When reviewing the record, "the court must view the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in its favor." *Id.* (quoting *Tysinger v. Police Dep't of City of Zanesville*, 463 F.3d 569, 572 (6th Cir. 2006)). "The mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for [that party]." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). Summary judgment is not appropriate when "the evidence presents a sufficient

---

recordings. (*See id.* at PageID.790–799.) The last two object to the Magistrate Judge's legal analysis of Hall's false arrest and excessive force claims. (*See id.* at PageID.800–802.) Taken collectively, Hall raises two general objections: (1) the officers did not have probable cause to arrest him, and (2) the officers used excessive force when they arrested him.

disagreement to require submission to a jury." *Id.* at 251–52.  Indeed, "[c]redibility determinations, the weighing of the evidence, and the drafting of legitimate inferences from the facts are jury functions, not those of a judge."  *Id.* at 255.

## III

## A

## 1

The Court begins with Hall's objection to the Magistrate Judge's recommendation that his false arrest claim be dismissed.  Hall objects that the *Heck* doctrine does not bar that claim – at least to the extent it is brought against Officer Cousino – because he was found not guilty of resisting Officer Cousino. (*See* Objections, ECF No. 47, PageID.800.)  Hall further contends that the officers did not have probable cause to arrest him. (*See id.*)  The Court need not reach Hall's objections to the Magistrate Judge's application of *Heck*, however, because the officers are clearly entitled to qualified immunity for the arrest.

Qualified immunity "protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Green v. Throckmorton*, 681 F.3d 853, 864 (6th Cir. 2012) (quoting *Pearson v. Callahan*, 555 U.S. 223, 231 (2009)).  "Once raised, it is the plaintiff's burden to show that the defendant[] [is] not entitled to qualified immunity." *Kinlin v. Kline*, 749 F.3d 573,

577 (6th Cir. 2014) (quotation omitted). The United States Court of Appeals for the Sixth Circuit "has generally used a two-step [qualified immunity] analysis: (1) viewing the facts in the light most favorable to the plaintiff, [the court] determine[s] whether the allegations give rise to a constitutional violation; and (2) [the court] assess[es] whether the right was clearly established at the time of the incident." *Id.* (quotation omitted). "[U]nder either prong [of this inquiry], courts may not resolve genuine disputes of fact in favor of the party seeking summary judgment." *Tolan v. Cotton*, 572 U.S. 650, 656 (2014).

An officer may be entitled to qualified immunity from a false arrest claim even where he lacked actual probable cause for an arrest. As the Sixth Circuit has explained, a "lack of probable cause is not necessarily fatal to an officer's defense against civil liability for false arrest. Rather, an officer is entitled to qualified immunity under § 1983 if he or she could reasonably (even if erroneously) have believed that the arrest was lawful, in light of clearly established law and the information possessed at the time by the arresting agent." *Green*, 681 F.3d at 865 (quotation omitted); *see also Kennedy v. City of Villa Hills*, 635 F.3d 210, 214 (6th Cir. 2011) ("Thus, even if a factual dispute exists about the objective reasonableness of the officer's actions, a court should grant the officer qualified immunity if, viewing the facts favorably to the plaintiff, an officer reasonably could have believed that the arrest was lawful.").

Here, the officers reasonably could have believed that they had probable cause to arrest Hall. Indeed, a jury – after hearing the audio recordings of the incident and considering testimony from Parise, Cousino, Micks-Harm, and Hall – found beyond a reasonable doubt that Hall had falsely reported an emergency to 911 and had resisted and obstructed Officer Parise. (*See* Verdict, ECF No. 26-5, PageID.558.) The jury's verdicts provide a very strong indication that, at an absolute minimum, Parise and Cousino could reasonably have believed that they had probable cause to arrest Hall.[5] And apart from the jury's verdict, the audible portions of the audio tapes establish that the officers could reasonably have believed that they had probable cause to arrest Hall for resisting and obstructing Parise and for making a false report. The audible parts of the tape reflect Hall disobeying Parise's lawful directions and calling 911 to report being assaulted prior to the real beginning of the physical struggle. Upon witnessing that misconduct by Hall, both officers could reasonably have believed that they had probable cause to arrest Hall for both

---

[5] The Sixth Circuit has held that a plaintiff who has been convicted on an obstructing charge like the R & O charge against Hall may be estopped from establishing the lack of probable cause element of his false arrest claim. *See Walker v. Schaeffer*, 854 F.2d 138, 143 (6th Cir. 1988) (quoting *Cameron v. Fogarty*, 806 F.2d 380, 388–89 (2d Cir. 1986) ("[W]here law enforcement officers have made an arrest, the resulting conviction is a defense to a § 1983 action asserting that the arrest was made without probable cause."); *Shaw-El v. City of Madison Heights*, No. 09-cv-12525, 2010 WL 2650843, at *2 (E.D. Mich. June 30, 2010).

resisting and obstructing and for making a false report.[6]  Accordingly, the officers are entitled to qualified immunity on Hall's false arrest claim.

Finally, the fact that Hall was acquitted of resisting and obstructing Officer Cousino does not change the qualified immunity analysis nor deprive Officer Cousino of qualified immunity on Hall's false arrest claim.  Even if Hall did not resist Officer Cousino, for the reasons explained above both officers could reasonably have believed that Hall committed the two other offenses in their presence: resisting Officer Parise and making a false emergency report.  And because both officers could reasonably have believed that they had probable cause to arrest for these two offenses, they are entitled to qualified immunity for the arrest of Hall even if they lacked probable cause to arrest him for the third offense of resisting Officer Cousino.  Indeed, so long as the officers reasonably could have

---

[6] "The elements of resisting or obstructing a police officer under MCL 750.81d(1) are: (1) the defendant assaulted, battered, wounded, resisted, obstructed, opposed, or endangered a police officer, and (2) the defendant knew or had reason to know that the person that the defendant assaulted, battered, wounded, resisted, obstructed, opposed, or endangered was a police officer performing his or her duties." *People v. Quinn*, 853 N.W.2d 383, 491 (Mich. Ct. App. 2014) (quotation omitted).  The elements of falsely reporting a medical or other emergency under MCL 750.411a(4) are: (1) the defendant made a fictitious report of a medical or other emergency to a government employee who is authorized to receive reports of medical or other emergencies, and (2) the defendant intended to do so. *See* MCL 750.411a(4)(a); *see also* Jury Instructions at 274:3–11, ECF No. 26-2, PageID.505; *cf. People v. Whitaker*, No. 343988, 2019 WL 1746335, at *1 (Mich. Ct. app. Apr. 18, 2019) (discussing the elements of the analogous claim of making a false report of a felony under MCL 750.411a(1)).

believed that they had probable cause to arrest for a single offense, they would be entitled to qualified immunity on Hall's false arrest claim.

## 2

Hall also contends that he has a valid false arrest claim because the officers "clearly violat[ed] the Fourth Amendment right of plaintiff to be safe in his home." (Objections, ECF No. 47, PageID.800; citing *Payton v. New York*, 445 U.S. 573 (1980).) Hall argues, in other words, that his arrest violated the Fourth Amendment because the officers arrested him after they made a warrantless entry into Micks-Harm's house. (*See id.*) This argument fails because Micks-Harm *invited* the officers into *her* house. (*See* Micks-Harm Testimony at 168:1–3, ECF No. 26-2, PageID.399.) The officers thus did not violate the Fourth Amendment when they arrested Hall in Micks-Harm's home. *See United States v. Stokes*, 631 F.3d 802, 807 (6th Cir. 2011) (explaining that the Fourth Amendment does not prohibit officers from making a warrantless arrest in a home if they have received valid consent to enter).

## B

The Court next turns to Hall's objection that there is a genuine dispute of fact regarding whether the officers used excessive force. (*See* Objections, ECF No. 47, PageID.801–802.) The Court sustains this objection.

The Defendants' argument on Hall's excessive force claim against Parise and

Cousino, in its entirety, is:

> Mr. Hall and Micks-Harm both claim that Officer Parise and Cousino punched Mr. Hall on December 21, 2017. This is clearly incorrect. All officers testified Mr. Hall was not struck or that any excessive force was used. Only a reasonable amount of force to effectively place Mr. Hall into handcuffs. (Ex. B, pp 80-82, 87-90, 93-97, 130-137). Interestingly enough, the audio clearly indicates that Ms. Micks-Harm is yelling at Mr. Hall to "stop resisting." (Ex. B, pp 182-183, Ex. C., p 13).

* * *

> For an officer to be subjected to § 1983 liability for the use of excessive force, a plaintiff must prove that the officer "(1) actively participated in the use of excessive force, (2) supervised the officer who used excessive force, or (3) owed the victim a duty of protection against the use of excessive force." *Turner v. Scott*, 119 F.3d 425, 429 (6th Cir. 1997). "As a general rule, mere presence . . . , without a showing of direct responsibility for the action, will not subject an officer to liability." *Ghandi v. Police Dep't of City of Detroit*, 747 F.2d 338, 352 (6th Cir. 1984). "Each defendant's liability must be assessed individually based on his own actions." *Binay v. Bettendorf*, 601 F.3d 640, 650 (6th Cir. 2010.)

> The sixth circuit has held a reasonable amount of force is necessary when the suspect actively resists arrest. Active resistance includes "physically struggling with, threatening, or disobeying officers." *Cockrell v. City of Cincinnati*, 468 Fed.Appx. 491, 495 (6th Cir.2012) (collecting cases). And it includes refusing to move your hands for the police to handcuff you, at least if that inaction is coupled with other acts of defiance. *Caie v. W. Bloomfield Twp.*, 485 Fed.Appx. 92, 94, 96–97 (6th

Cir.2012); see *Williams v. Ingham*, 373 Fed.Appx. 542, 548 (6th Cir.2010).

Here, Plaintiff actively resisted a lawful arrest by "physically struggling with, threatening, or disobeying officers," and refusing to move his hands for the police to handcuff him. Based upon the aforementioned, it cannot be concluded that the officers exhibited any excessive force upon Stacey Hall.

(Mot. for Summ J., ECF No. 26, PageID.206, 217–218.) As noted above, Defendants did not invoke qualified immunity for their use of force. (*See id.*)

The Magistrate Judge agreed with Defendants that Hall's excessive force claim should be dismissed. (*See* R & R, ECF No. 44, PageID.744–749.) The Magistrate Judge recognized that if Hall's and Micks-Harm's testimony were accepted as true, there would be a genuine issue of fact that precluded granting summary judgment on Hall's excessive force claim. (*See id.* at PageID.746.) But the Magistrate Judge concluded that Hall's and Micks-Harm's version of events was so "blatantly contradicted" by the record, including the audio recordings from the officers' body microphones, that that their testimony could be discarded for summary judgment purposes. (*See id.* at PageID.746–749; citing *Scott*, 550 U.S. at 380, *Shreve v. Franklin Cty., Ohio*, 743 F.3d 126, 132 (6th Cir. 2014), and *Coble v. City of White House, Tenn.*, 634 F.3d 865, 868–69 (6th Cir. 2011).)

The Court respectfully disagrees with that conclusion. The Court may disregard sworn testimony at the summary judgment stage only if it is "blatantly

contradicted by the record, so that no reasonable jury could believe it." *Scott*, 550 U.S. at 380. This is a "difficult" standard to meet "and requires opposing evidence that is largely irrefutable." *Amerson v. Waterford Twp.*, 562 F. App'x 484, 489 (6th Cir. 2014). And where an audio recording blatantly contradicts only "part" of a party's testimony, a district court may not, on that basis, "discredit [the party's] entire version of events." *Coble,* 634 F.3d at 870. Instead, a district court may discredit a party's entire version of events only where an audio recording "blatantly contradict[s the] party's *entire* version of the events in material respects to each claim." *Hanson v. Madison Cty. Det. Ctr.*, 736 F. App'x 521, 527 (6th Cir. 2018) (emphasis in original) (quotation omitted).

Moreover, "the *lack* of sound on an audio recording" often "cannot be reliably used to discount [a party's] testimony." *Coble*, 634 F.3d at 869–70 & n.4 (6th Cir. 2011) (emphasis added). That is because "[m]any factors could affect what sounds are recorded, including the volume of the sound, the nature of the activity at issue, the location of the microphone, whether the microphone was on or off, and whether the microphone was covered." *Id.* at 869.

Here, the two audio recordings do not so blatantly contradict Hall's and Micks-Harm's testimony about the officers' use of force that their testimony may be disregarded. The first of the audio recordings is difficult to follow. (*See* Parise Body Mic Audio, ECF No. 37-4.) It is choppy and inaudible in part. Any conflict between

this spotty recording and the testimony by Hall and Micks-Harm is not so blatant that the testimony may be disregarded.

The second recording is higher quality. (*See* Cousino Body Mic Audio, ECF No. 37-5.) The voices are more clearly audible. But while the voices are clearer on this recording, it does not provide a crystal-clear picture of what was happening while the officers were employing force against Hall. A dog can be heard loudly barking throughout the encounter, and – during the critical portion of the tape where the officers are applying force to Hall – the audio is somewhat muffled. The audio reflects a struggle, and the recording of the struggle does admittedly seem much more consistent with the officers' account of their use of force than with Hall's and Micks-Harm's description of the force. But it is simply impossible to tell for sure based upon the audio (1) how many blows the officers applied to Hall (the two described by the officers or the 6–10 described by Hall and Micks-Harm) and/or (2) whether the officers continued to apply force after getting Hall under control (as Hall claimed but the officers denied). Because the audio does not unambiguously and blatantly contradict Hall's and Micks-Harm's testimony about the officers' use of force, the Court may not disregard that testimony for summary judgment purposes. On the contrary, because their testimony regarding the officers' application of force is not blatantly contradicted, it must be accepted as true. *See Coble*, 634 F.3d at 870

(accepting testimony as true for summary judgment purposes because it was not "so utterly discredited by the record that no reasonable jury could believe it").

The question, then, is: does Hall's and Mick's-Harm's testimony, when accepted as true, preclude summary judgment in favor of the officers on Hall's excessive force claim? It does.

The Supreme Court has identified three non-exhaustive factors to determine whether, under the totality of the circumstances, a police officer's use of force was reasonable: "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Brown v. Chapman*, 814 F.3d 447, 459 (6th Cir. 2016) (quoting *Graham*, 490 U.S. at 396). Here, the crimes at issue were not especially severe. And for purposes of summary judgment, the Court must conclude, as Hall and Micks-Harm testified, that the officers continued to apply substantial force – vigorous punches – after Hall no longer posed a threat to the officers and after he had stopped actively resisting. Under these circumstances, a jury could reasonably conclude that the officers used excessive force. Accordingly, Officers Parise and Cousino are not entitled to summary judgment on Hall's excessive force claim.

## C

The Magistrate Judge recommended that the Court grant summary judgment against Hall on his excessive force claim against all of the other officers. (*See* R & R, ECF No. 44, PageID.749–750.) The Magistrate Judge noted that Hall had not presented any evidence that the other officers were involved in the allegedly excessive use of force. (*See id.*) Hall did not object to this component of the Magistrate Judge's recommendation (*see* Objections, ECF No. 47), and thus further review of these claim is waived. *See Thomas*, 474 U.S. at 149.

In any event, the Court agrees with the Magistrate Judge that Hall has not presented evidence that any named individual defendant (other than Parise and Cousino) was involved in the allegedly excessive force used against Hall. Thus, the Court will grant summary judgment against Hall on his excessive force claim against all of the other individual defendants: Flora, McCormick, Tolstedt, Marks, Breeding, and Lavoy.

## D

Finally, the Magistrate Judge recommended that the Court grant summary judgment in favor of the City of Monroe on Hall's municipal liability claim. (*See* R & R, ECF No. 44, PageID.750.) She based that recommendation on her conclusion that Hall had failed to establish that any of the individual defendants violated his constitutional rights. (*See id.*) Thus, she concluded, there was no basis for municipal

liability. (*See id.*)  Hall did not object to this recommendation (*see* Objections, ECF No. 47), and further review of this claim is waived. *See Thomas*, 474 U.S. at 149.

In any event, the Court agrees with the Magistrate Judge that the City is entitled to summary judgment.  Although the Court has concluded that Hall has presented sufficient evidence that Officers Parise and Cousino violated his right to be free from excessive force, the Court nonetheless agrees with the Magistrate Judge's determination that the City is entitled to summary judgment on Hall's municipal liability claim.  Hall has not presented evidence that the use of excessive force against him resulted from a municipal custom or policy.   Thus, his municipal liability claim fails as a matter of law.

## E

The State of Michigan is named as a defendant in this action.  Eleventh Amendment sovereign immunity, however, bars § 1983 actions against a state and state officials acting in their official capacities. *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989).  Accordingly, the State of Michigan and any officials who Hall's complaint purports to name in their official capacities are dismissed.

## IV

On October 8, 2019, Hall filed a motion to sever an unrelated action of Hall's from consolidation in a different case (ECF No. 46).  Stacey Hall is listed as an interested party in *Micks-Harm v. Nichols*, No. 18-cv-12634 (E.D. Mich.).  Hall says

that Chief Judge Hood added him as a party to *Micks-Harm*, that Chief Judge Hood did not dismiss Hall when she dismissed all of the claims in that case, and that Hall wishes to continue the litigation under "Stacey Simeon Hall v. William Paul Nichols." (*See* Mot. to Sever, ECF No. 46, PageID.757.) Hall filed an identical motion to sever in the *Micks-Harm* case. (*See Micks-Harm v. Nichols, et al.*, No. 18-cv-12634, ECF No. 752.) According to Chief Judge Hood, "Hall asserts that the action, *Stacey Hall v. William Paul Nichols, et al.*, was added to the above-captioned case. It was not." (*Micks-Harm v. Nichols, et al.*, No. 18-cv-12634, ECF No. 792.) Chief Judge Hood dismissed Hall's motion. (*See id.*) For the same reasons, the Court dismisses Hall's motion to sever that is currently before this Court.

## V

On November 15, 2019, Hall filed a Motion for Oral Argument to further "present his case" (ECF No. 50). The Court concludes that it does not need oral argument to rule on any pending issues in this case. Hall's motion is denied.

## VI

Accordingly, for the reasons stated above, **IT IS HEREBY ORDERED** that:

- Hall's Objections to the R & R (ECF No. 47) are **SUSTAINED IN PART** and **OVERRULED IN PART**;

- The recommended disposition of the R & R (ECF No. 44) is **ADOPTED IN PART**;

- Defendants' Motion for Summary Judgment (ECF No. 26) is **GRANTED IN PART** and **DENIED IN PART**. Hall's excessive force claim against Officers Parise and Cousino may proceed. Hall's other claims against all other defendants are **DISMISSED**;

- Hall's Motion to Sever (ECF No. 46) is **DISMISSED**; and

- Hall's Motion for Oral Argument (ECF No. 50) is **DISMISSED**.

- The Court will conditionally appoint counsel for Hall and, once counsel is appointed, the Court will schedule a settlement conference.

**IT IS SO ORDERED**.

s/Matthew F. Leitman
MATTHEW F. LEITMAN
UNITED STATES DISTRICT JUDGE

Dated: February 6, 2020

I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on February 6, 2020, by electronic means and/or ordinary mail.

s/Holly A. Monda
Case Manager
(810) 341-9764